WICKENS, PROS. ATTY., APPELLEE, *v.* DUNN ET AL., APPELLANTS.

(No. 1037—Decided December 4, 1942.)

*Mr. William G. Wickens,* prosecuting attorney, *in propria persona.*

*Mr. Richard F. Stevens,* assistant prosecuting attorney, for appellants.

WASHBURN, J.   This is an action to enjoin the county commissioners and the county auditor from issuing, signing, executing and delivering notes under authority of Section 2293-92, General Code, on the ground that said section did not authorize the making of the contract which is the basis for the issuance of said notes.

The contract was made with a federal agency designated as the "Surplus Marketing Administration,"

and the claim is that the statute authorized a contract to be made only with the federal agency described as the "Federal Surplus Commodities Corporation."

The Common Pleas Court granted the injunction, and the cause is before this court on an appeal on questions of law and fact.

The United States created, in the Agricultural Department, an agency originally known as the "Federal Surplus Relief Corporation," and later as the "Federal Surplus Commodities Corporation," for the purpose of carrying out a plan to furnish surplus commodities to the needy.

Such plan provided that various public relief organizations of the states could, by contract with such federal agency, co-operate therewith and receive the benefits obtainable under said plan.

Such federal agency was created by means of a corporation incorporated under the laws of Delaware in 1933.

On April 2, 1940, the President, pursuant to the provisions of the Reorganization Act of 1939, transmitted to Congress "Reorganization Plan No. III," which by Section 133u of Title 5, U. S. Code, became effective on June 30, 1940.

Section 5 of that plan read as follows:

"Section 5. Surplus Marketing Administration.— The Division of Marketing and Marketing Agreements of the Agricultural Adjustment Administration of the Department of Agriculture and its functions and the Federal Surplus Commodities Corporation as an agency of the Department of Agriculture and its functions are *consolidated into an agency in the Department of Agriculture to be known as the Surplus Marketing Administration.* The Surplus Marketing Administration shall be headed by an Administrator, who shall be appointed by and subject to the direction and super-

vision of the Secretary of Agriculture." (Italics ours.)

The details of the stamp food plan and the administration thereof under Reorganization Plan No. III were promulgated by the secretary of agriculture, and became effective on July 1, 1940. By those rules and regulations, the word " 'Administration' means the Surplus Marketing Administration, United States Department of Agriculture," and the words and initials " 'Federal Surplus Commodities Corporation,' 'F. S. C. C.,' or 'Corporation,' shall be construed to mean the Administration."

The statute passed by the state of Ohio authorizing county commissioners to issue notes to enable relief organizations of the state of Ohio to co-operate with and obtain the benefits of said plan, is entitled "Subdivisions may issue notes to participate in food stamp plan of distributing surplus foods," and authorizes the defendants to issue notes "pursuant to an agreement between a county * * * and the federal surplus commodities corporation."

While the title of a statute—called an "act" when passed by the Legislature—is not a part thereof, it is an element which may be considered in arriving at a proper interpretation of the statute where an ambiguity or uncertainty exists in the statute.

In this respect, so far as rules of interpretation are concerned, the title of an act—which, incidentally, appears on the enrolled bill and is before the Legislature when the act is passed—must be distinguished from the headnote, or "section heading," of a statute, which does not appear on the bill when passed by the Legislature, and which is ascertained and added to the section by the Secretary of State after the passage of the act by virtue of the provisions of Section 162, General Code. The reasons for taking into consideration the title of an act under the conditions mentioned, and for

giving only little, if any, weight to the headnote of a statute, are thus obvious.

It is conceded that if the words "surplus marketing administration" had been used instead of the words "surplus commodities corporation," there would be no question about the right of the defendants to issue the notes in question.

A reading of that section (2293-92, General Code) leads us to the conclusion that the Legislature had in mind the plan of distribution of surplus foods which was then in operation by the federal government, and that that alone was what it intended to describe by the words used in the statute.

The plan of the federal government for the distribution of surplus commodities was from the beginning administered by the Agricultural Department of the federal government, and the mere change in name of the agency within that department by which the plan was administered did not change the identity of the agency. There never was but one agency which administered this plan, although it was known at different times by different names, and in this connection we consider it of no paramount importance that such agency was at one time administered under the fiction of a corporation.

By the wording of Section 5 of Reorganization Plan No. III, hereinbefore quoted, all of which plan, as hereinbefore shown, was adopted by Congress, it is unmistakably plain that such corporation and all of its functions were simply being operated under a different name.

It seems to us that there can be no possible doubt as to what the Legislature of Ohio meant in enacting Section 2293-92, General Code, and that it meant to and did authorize certain subdivisions of the state to cooperate with the federal agency, regardless of name, .

which was distributing surplus foods, and to issue notes to enable them to do so.

In so holding we are not indulging in judicial legislation; at the time the statute was passed, there was no agency functioning under the name used in the statute, but the agency described in the title and in the body of the act of the Legislature which had functioned under that name was functioning under another name, and if we do not give effect to the plain intention of the Legislature, then such statute would be impossible of execution and the plain object of its enactment would be defeated.

When it appears beyond doubt that a statute, when read literally as printed, is impossible of execution, or will defeat the plain object of its enactment, or is senseless, or leads to absurd results or consequences, a court is authorized to regard such defects as the result of error or mistake, and to put such construction upon the statute as will correct the error or mistake by permitting the clear purpose and manifest intention of the Legislature to be carried out.

When we consider the celerity with which new governmental agencies were created, the multitudinous changes in the names thereof, and the multiplicity of such agencies, it is not at all surprising that the Legislature made a mistake in the name under which said agency was functioning at the time the law was passed.

No other objections are interposed to the right and power of the defendants to do what they propose to do.

A decree for appellants, dismissing the petition of the appellee, may be drawn.

*Petition dismissed.*

DOYLE, P. J., and STEVENS, J., concur.