OPINION
On January 29, 2001, Ronald L. Beauford was indicted by a Franklin County grand jury on a single count of aggravated murder. In addition, the indictment carried two specifications: one alleging that he used a firearm during the commission of the offense, and the other that he discharged the firearm from a motor vehicle (in common parlance, a "drive-by" specification). The latter specification, as discussed in detail below, carries a harsher penalty than the former.
The indictment resulted from an incident during which Mr. Beauford purportedly shot and killed Ralph R. ("Shawn") Wilson on October 15, 2000. A co-defendant, Laroy Robinson, was also indicted. The facts giving rise to the indictment are set forth below in our discussion of the second assignment of error.
In July of 2001, Mr. Beauford entered a guilty plea to the lesser offense of involuntary manslaughter, together with the specifications alleged in the indictment.
The trial court ordered preparation of a presentence investigation report and scheduled the case for sentencing.
A sentencing hearing was conducted on September 14, 2001. The trial court sentenced Mr. Beauford to a total of eighteen years' imprisonment.
Ronald Beauford (hereinafter "appellant") has timely appealed the sentence imposed by the trial court, assigning two errors for our consideration:
 1. The court sub judice erred as a matter of law when it sentenced appellant to consecutive prison terms of three years for pleading guilty to R.C. § 2941.145 and five years for pleading guilty to R.C. § 2941.146.
 2. The court sub judice erred in its imposing the maximum sentence on appellant.
For ease of discussion, we address the second assignment of error first as it necessitates a recitation of the facts. We glean the essential stipulated facts from the transcript of the plea proceedings, as follows:
 [PROSECUTION]: On October 15, 2000, the defendant, his brother, the co-defendant, Laroy Robinson, and the victim Ralph Wilson[,] who's known to his family and friends as Shawn, were all at the hair show at the Aladdin Shrine Temple. At Aladdin Shrine Temple[,] there was some kind of altercation. They had a history of altercations.
 And when the hair show was over, everyone left to go to another bar. The victim was riding in his Land Rover on [Interstate] 670 heading west towards downtown. The [appellant] and the co-defendant were in another vehicle and [appellant] was the passenger in that vehicle. When the [appellant's] vehicle came up beside the victim's vehicle, the [appellant] stood up through the sunroof, pointed the gun in the direction of the victim, Shawn Wilson, and fired two shots followed by several more shots.
 The victim was struck several times. He was able to get his vehicle off the road and stop it. He was transported and pronounced dead at the hospital.
 The family members are present today * * *. They are in agreement with the plea and they understand the plea. They understand the State's recommendation. They understand that the sentence is actually up to the court.
* * *
 The [appellant] is also aware that he is the suspect in another homicide and in no way are any conditions of this plea to include anything to do with the other homicide that he is a suspect in.
* * *
 [DEFENSE COUNSEL]: Your Honor, just we think if this case would go to trial, the facts would show the victim was brandishing a handgun outside of his window and pointing it at both the [appellant] and the [appellant's] passenger. I think the gun was recovered with the prints of the victim on it at the scene. [Tr. 9-11.]
The above constitutes the entirety of facts set forth on the record with respect to the involuntary manslaughter offense itself. Additional facts considered and addressed by the trial judge for sentencing purposes are discussed below.
Appellant's second assignment of error contends that the trial court abused its discretion in imposing the maximum sentence for the involuntary manslaughter conviction. First-degree felonies are generally subject to prison terms of three years' minimum to a maximum of ten years. R.C. 2929.14(A)(1). Obviously, appellant was indeed sentenced to ten years on the primary offense, exclusive of the specifications which are the subject of the remaining assignment of error.
Involuntary manslaughter, as applicable here, is prescribed by R.C.2903.04 as follows:
 (A) No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony.
Violation of this provision of the involuntary manslaughter statute is a felony of the first degree, pursuant to R.C. 2903.04(C).[1]
In reviewing a trial court's imposition of a maximum sentence, we are guided by the general concept codified in R.C. 2929.14(C), which speaks directly to the legality of maximum prison terms. That provision, as is relevant here, mandates that such sentences are authorized "* * *only upon offenders who committed the worst forms of the offense, [and] upon offenders who pose the greatest likelihood of committing future crimes * * *."
Preliminarily, however, we set forth the basic statutory guidelines by which a trial court is bound in sentencing criminal defendants generally. The legislature has codified the "purposes and principles of sentencing" in R.C. 2929.11:
 (A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.
 (B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders. [Emphasis added.]
In accord with the mandates of R.C. 2929.11 and 2929.14(C), R.C. 2929.12
enumerates "seriousness" and "recidivism" factors, which examine the "seriousness of the offender's conduct and its impact upon the victim" and the necessity of "protect[ing] the public from future crime" by the offender.
R.C. 2929.12(B) is directed at the "seriousness" determination, setting forth factors which might indicate that the offender's conduct is "more serious than conduct normally constituting the offense." In toto[2], these factors are:
 (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 (3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 (6) The offender's relationship with the victim facilitated the offense.
 (7) The offender committed the offense for hire or as part of an organized criminal activity.
 (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
 (9) If the offense is a violation of * * * [several enumerated statutes including, inter alia, domestic violence] involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent * * * of one or more of those children.
Division (D), again in toto, sets forth recidivism factors indicative of those offenders "who pose the greatest likelihood of committing future crimes," as follows:
 (1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing * * * or under post-release control * * * for an earlier offense.
 (2) The offender previously was adjudicated a delinquent child * * * or the offender has a history of criminal convictions.
 (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * * or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
 (5) The offender shows no genuine remorse for the offense.
In addition to those factors specifically enumerated above, trial courts have discretion to consider "* * * any other factors that are relevant to achieving those purposes and principles of sentencing set forth in * * * [R.C.] 2929.11 * * *." R.C. 2929.12(A); (emphasis added).
Turning again to the record before us, we look to discern whether the trial court sufficiently complied with the applicable sentencing considerations.
In its judgment entry journalizing appellant's conviction and sentence, the trial court included the following language, in pertinent part:
 The court has considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12. In addition, the Court has weighed the factors as set forth in the applicable provisions of R.C. 2929.13 and R.C. 2929.14. * * *
* * *
 The Court further finds that based upon all of the information in the Pre-Sentence Investigation and the Court's findings as set forth in its enclosed "worksheet," both of which are attached hereto and incorporated herein, that the offender is the worst form of offender[3] who poses the greatest likelihood of committing future crimes.
 After imposing [sentence,] the Court gave its finding[s] and stated its reasons for the sentence as required by R.C. 2929.19 * * *. [Entry at 2.]
Reviewing the "felony sentencing worksheet" referenced by the trial judge in his sentencing entry, it reflects that he found two "more serious" factors pursuant to R.C. 2929.12. First, the judge found that the offense was "committed for hire or as part of organized criminal activity." The judge then made a "finding" under the "any other factor" consideration; the judge wrote "murder."
Regarding the "recidivism likely" factors, the judge checked three. First, the judge made a finding of "[p]rior adjudication of delinquency or history of criminal convictions." Second, the judge found "[f]ailure to respond favorably in the past to probation or parole." Finally, the judge found a "[f]ailure to acknowledge pattern of drug or alcohol abuse that is related to the offense."
In ascertaining the trial court's "findings" and "reasons" as alluded to in its entry, incorporating its "worksheet" and the presentence investigation report, we turn to the transcript of the sentencing proceedings.
Defense counsel first informed the court that he had no "comments" regarding the presentence investigation report. Counsel then informed the court that appellant "exress[ed] extreme remorse for what happened and * * * would like to apologize to the victims." Finally, defense counsel noted that appellant "understands that he's in part culpable for this and does take responsibility." (Tr. 13.)
The victim's mother explained the suffering endured by her and her family as a result of the loss of her first-born son, whose death left her grandchildren "fatherless." She also opined that appellant's expressed remorse was clearly disingenuous. (Tr. 14.)
Appellant spoke on his own behalf, emphasizing that he is "deeply sorry" for his actions, "especially * * * for the pain and suffering" he caused, both to the victim's family and his own. He "begg[ed] * * * forgiveness" and assured the court that he planned to use his time in prison to educate himself in order to become "equipped with the tools that's necessary for society." (Tr. 15-16.)
The trial judge, after informing appellant that he was imposing the maximum sentence, stated:
 This was absolutely a senseless killing and your prior record, as you know, Mr. Beauford, you have had three prior [carrying concealed weapons], had at least seven prior assault cases. Your history and character demonstrate that the shortest prison term would demean the seriousness of your conduct and not adequately protect the public. And based upon the facts of this case and your horrendous prior record, you're the worst form offender and pose the greatest likelihood of committing future crime. [Tr. 18.]
We find no error by the trial court in imposing the maximum sentence upon appellant. The trial judge adequately complied with the sentencing statutes by articulating findings in support of his imposition of the maximum sentence. Our review of the record, particularly appellant's lengthy criminal record as evidenced by the presentence investigation report, supports the trial court's "recidivism" determination.
With respect to the "seriousness" inquiry, R.C. 2929.12(B), as indicated above, requires consideration of factors tending to show that the offender's conduct "is more serious than conduct normally constituting the offense." To state the absurdly obvious, any form of manslaughter, like murder, necessarily results in "serious" physical harm to its dead victim. Additionally obvious is the fact that most homicides leave more "victims" than the one who actually died, as evidenced here by the statements of the victim's mother.
As discussed above, appellant was indicted on a charge of aggravated murder. During the allocution phase of the plea and sentencing proceedings, appellant, in all pertinent aspects, acquiesced to the facts of this drive-by homicide. In summary, the state of this record strongly supports a determination that appellant's conduct was "more serious than conduct normally constituting the offense" of involuntary manslaughter, in accord with R.C. 2929.12(B).
The second assignment of error is overruled.
Turning now to appellant's first assignment of error, he argues that the trial court erred as a matter of law in imposing consecutive prison terms for the two gun specifications. To reiterate, the court imposed a three-year term for the "traditional" R.C. 2941.145 firearm specification and a consecutive five-year term for the R.C. 2941.146 "drive-by" specification.
The record reflects that the trial judge initially "assume[d] that the specs merge[d] * * *." (Tr. 3.) Given the relative dearth of case law analyzing the legislation pertaining to the rather peculiar "drive-by" specification, the trial judge's initial assumption is readily understandable. Furthermore, any uncertainty in interpreting the legislation at issue here is also understandable, given that such legislation has been variously revised some dozen times since Ohio's criminal code was "overhauled" in July of 1996.
Although the prosecution informed the trial judge that he had "authority" for the notion that the specifications could and should be served consecutively, the prosecution produced no such authority at sentencing. Clearly, the trial judge relied upon the prosecution's position, ultimately ordering the specifications to be served consecutively.
There is indeed "authority" for ordering consecutive sentences for specifications such as those at issue here. In fact, there now exists legislation not merely "authorizing" consecutive-specifications sentences but arguably requiring imposition of such sentences under facts such as those present here. However, as explained below, we do not reach that particular issue and must nonetheless reverse that portion of the trial court's sentence under the circumstances of this particular case.
The circumstances which require reversal of the consecutive-specifications sentences arise from the version of R.C. 2929.14
applicable to appellant's case, that version which was enacted effective May 17, 2000. Again, appellant's offense occurred on October 15, 2000. Put most succinctly, appellant here benefits from a "typo" in that legislation and a case from this court speaking directly to the legal consequences of that apparent legislative error.
In State v. Matthews (Aug. 9, 2001), Franklin App. No. 01AP-139, unreported, appeal not allowed (2001), 93 Ohio St.3d 1497, this court addressed an identical issue which we deem dispositive of the case before us. As such, we quote Matthews at length:
 * * * Initially, we note that both sides have referenced the incorrect version of the statute. Both sides have quoted the version that was effective on March 23, 2000, rather than a later amended version effective May 17, 2000, which applies to appellant. R.C. 2929.14, effective May 17, 2000, provides, as follows:
 (D)(1)(a) * * * If an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in section 2941.141 * * *, 2941.144 * * *, or 2931.145 * * * of the Revised Code, the court shall impose on the offender one of the following prison terms:
* * *
 (ii) A prison term of three years if the specification is of the type described in section 2941.145 * * * of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the offense * * * or using it to facilitate the offense;
* * *
 (c) * * * If an offender who is convicted of or pleads guilty to a violation of * * * a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another, also is convicted of or pleads guilty to a specification of the type described in section 2941.146
* * * of the Revised Code that charges the offender with committing the offense by discharging a firearm from a motor vehicle * * *, the court, after imposing a prison term on the offender for the * * * other felony offense * * *, shall impose an additional term of five years upon the offender that shall not be reduced * * *.
* * *
 (E)(1) If a mandatory prison term is imposed upon an offender pursuant to division (D)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's control while committing a felony, if a mandatory prison term is imposed upon an offender pursuant to division (D)(1)(d) of this section for committing a felony * * * by discharging a firearm from a motor vehicle, or if both types of mandatory prison terms are imposed, the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term under either division and shall serve all mandatory prison terms imposed under those divisions consecutively to and prior to any prison term imposed for the underlying felony pursuant to division (A), (D)(2), or (D)(3) of this section or any other section of the Revised Code and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender. [Emphasis added.]
In analyzing this version of the earlier statute, the Matthews court ultimately concluded:
 Although the legislature may have intended for a court to sentence an offender to both a three-year term of imprisonment and a five-year term of imprisonment, R.C. 2929.14(E)(1) refers to R.C. 2929.14(D)(1)(d), rather than (D)(1)(c), for the five-year term of imprisonment for discharging a firearm from a motor vehicle. The prosecutor argues that the reference in division (E)(1) is a typographical error and we should apply the legislature's true intention, citing Wickens v. Dunn (1942), 71 Ohio App. 177 * * *. Although the legislature again amended the statute, effective March 22, 2001[4], and this version does refer to the correct section for discharging a firearm from a motor vehicle, in this case, we cannot change the wording of the statute to the detriment of * * * [appellant]. R.C. 2901.04 provides:
 (A) Except as otherwise provided in division (C) of this section, sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused. [Emphasis added.]
In following the Matthews case, we too must construe the sentencing statute in effect at the time of appellant's offense. Accordingly, we vacate appellant's sentence insofar as the trial court ordered that the specification sentences be served consecutively.
Although the arguments of counsel under this assignment of error do not address the issue underlying our disposition of this assignment of error, we nonetheless address arguments not rendered moot by our ruling.
In urging reversal of the trial court's imposition of the consecutive five-year drive-by specification, appellant argues that the specification does not apply to him. He relies upon that portion of R.C.2929.14(D)(1)(c) which authorizes imposition of the five-year term if, inter alia, the offender "* * * pleads guilty to a * * * felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another * * *." He argues, in essence, that involuntary manslaughter does not include as an essential element "the mens rea of purpose or knowledge." Given the facts of this case, we reject this argument.
The offense of involuntary manslaughter as a first-degree felony, as indicated infra, requires that the offender "cause[d] the death of another * * * as a proximate result of * * * committing or attempting to commit a felony." R.C. 2903.04(A). In this case, the record is clear that appellant, at the very least, attempted to commit felonious assault. The predicate offense, felonious assault, is proscribed by R.C. 2903.11(A) as follows:
No person shall knowingly:
Cause serious physical harm to another * * *;
 (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance * * *. [Emphasis added.]
Given the fact that appellant pled guilty to killing a man by shooting him (causing one's death as a result of "committing or attempting to commit a felony"), we find no merit to appellant's "lack of mens rea" argument. See, e.g., State v. Sowell (Feb. 18, 1992), Franklin App. No. 91AP-773, unreported ("death is proximate result of felony when it is the natural, logical and foreseeable consequence" of the felonious conduct), citing State v. Losey (1985), 23 Ohio App.3d 93.
We also reject the prosecution's argument that appellant "invited error" and/or waived any issues related to his sentence by appellant's agreement to plead guilty. Given our discussion of the statute in effect on the date of appellant's offense, we will not deem waived, invited or harmless error a sentence not then-prescribed by law.
The first assignment of error is sustained.
In sum, we find no error in the trial court's imposition of a ten-year maximum sentence for the involuntary manslaughter conviction and, accordingly, overrule the second assignment of error. However, having sustained the first assignment of error, the judgment of the trial court is reversed with respect to the firearm specifications. Therefore, this cause is remanded for resentencing proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part; and cause remanded.
LAZARUS and BROWN, JJ., concur.
[1] By contrast, violation of division (B), where the death occurs as a result of the commission or attempted commission of, inter alia, a misdemeanor, is a third-degree felony.
[2] We list those factors in toto, as they currently read in the revised version of the statute, which has been amended subsequent to the date of appellant's offense, most recently with an effective date of January 1, 2002. For example, provision (9) has been added, although it does not appear yet on the trial court's "felony sentencing worksheet." However, the amendments in no way affect this appellant.
[3] For purposes of exactitude only, we note that the R.C. 2929.12(B) analysis to be undertaken is to determine whether the offender's conduct "is more serious than conduct normally constituting the offense," not whether the "offender is the worst form of offender." The latter language employed by the trial court might suggest that this portion of the analysis requires, for example, consideration of the offender's history of unrelated offenses. Simply put, the inquiry in this provision asks whether appellant's conduct in committing this particular involuntary manslaughter offense is worse than other conduct "normally constituting" involuntary manslaughter. However, as explained infra, the outcome here is the same and, accordingly, the trial court's language is inconsequential.
[4] See R.C. 2929.14(E)(1)(a).