[Cite as *State v. Gomez*, 2011-Ohio-5475.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee/Cross-appellant

v.

CARLOS FRANCISCO GOMEZ

    Appellant/Cross-appellee

C.A. Nos.    25496
                25501

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 2009 07 2145

DECISION AND JOURNAL ENTRY

Dated: October 26, 2011

---

CARR, Judge.

{¶1}    Carlos Gomez appeals his conviction in the Summit County Court of Common Pleas. The State appeals from the judgment imposing sentence. This Court affirms, in part, and reverses, in part, and remands for resentencing.

I.

{¶2}    On July 23, 2009, Gomez was indicted on one count of domestic violence in violation of R.C. 2919.25(A)(B), a felony of the fifth degree as the charge alleged that Gomez knew that the victim was pregnant at the time of the offense. A criminal temporary protection order was issued on July 29, 2009, in favor of the victim, Elvira Cruz, against Gomez. Ms. Cruz' address was listed on the order as 571 Lynnfield Street, Lynn, Massachusetts 01904. At arraignment, Gomez pleaded not guilty to the charge.

{¶3}    The matter proceeded to trial before a jury. At the conclusion of trial, the jury found Gomez guilty of domestic violence and further made a finding that Gomez knew that the

victim was pregnant at the time of the offense. Gomez filed a motion for a judgment of acquittal pursuant to Crim.R. 29(C) or, in the alternative, for a new trial. The trial court denied the motion in toto.

{¶4} Prior to sentencing, Gomez filed a motion in opposition to the imposition of a mandatory prison term pursuant to R.C. 2919.25(D). The trial court granted the motion. At sentencing, the trial court sentenced Gomez to six months of incarceration, and suspended it upon the condition that he successfully complete two years of community control. The trial court further stayed the commencement of Gomez' period of community control pending his appeal. Both Gomez and the State filed timely appeals.

II.

### GOMEZ' ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIM.R. 29 MOTION AS THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION."

{¶5} Gomez argues that the trial court erred by denying his motion for acquittal pursuant to Crim.R. 29, because the State presented insufficient evidence to sustain a conviction for domestic violence. This Court disagrees.

{¶6} Crim.R. 29 provides, in relevant part:

"(A) The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Galloway* (Jan. 31, 2001), 9th Dist. No. 19752, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

{¶7} The test for sufficiency requires a determination of whether the State has met its burden of production at trial. *State v. Walker* (Dec. 12, 2001), 9th Dist. No. 20559; see, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring).

{¶8} Gomez was convicted of domestic violence in violation of R.C. 2919.25(A)[1] which stated at the time relevant to the commission of the offense that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." The crime was charged as a felony of the fifth degree based on the allegation that Gomez "knew that the victim of the violation was pregnant at the time of the violation[.]" R.C. 2919.25(D)(5).

{¶9} On appeal, Gomez argues only that the State failed to present sufficient evidence that the victim was a family or household member.[2] "Family or household member" includes "a person living as a spouse." R.C. 2919.25(F)(1)(a)(i). The statute defines "Person living as a spouse" as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."

---

[1] At trial, the State asserted that it was proceeding in its prosecution solely on the basis of R.C. 2919.25(A), rather than on both subsections (A) and (B).

[2] Although Gomez argues that the State failed to present sufficient evidence that he caused serious physical harm to the victim, the State did not prosecute Gomez pursuant to R.C. 2919.25(B), the provision requiring serious physical harm. Accordingly, we decline to address the issue of serious physical harm.

R.C. 2919.25(F)(2). This Court has adopted the Ohio Supreme Court's definition of "cohabitation," the essential elements of which are "(1) sharing of familial or financial responsibilities and (2) consortium." *State v. Sudderth*, 9th Dist. No. 24448, 2009-Ohio-3363, at ¶11, quoting *State v. Williams* (1997), 79 Ohio St.3d 459, 465. The *Williams* court listed possible factors which might establish shared familial or financial responsibilities as "provisions for shelter, food, clothing, utilities, and/or commingled assets." Id. The factors which might demonstrate consortium include "mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations." Id. The Supreme Court emphasized that "[t]hese factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact." Id.

{¶10} At trial, two eye witnesses to the incident testified that they heard a man and a woman arguing loudly in a parking lot next door to where the two eye witnesses were working at approximately 11:00 p.m. on July 8, 2009. Robert Wimley and Chazman Addie both testified that they saw the man cock his arm back as if to hit the woman, but he instead grabbed the woman by the neck and choked her to the ground. The man then stood over the woman and continued to scream at her. Messrs. Wimley and Addie went inside their place of business and asked their manager to call the police. Lindsey Baker called 911 and the police arrived on the scene.

{¶11} Officer Jamie Mizer of the Springfield Police Department testified that she was dispatched to the scene regarding a male who had choked a female to the ground. When she arrived, the couple had already been separated, and Gomez was in handcuffs in the back of a deputy sheriff's cruiser. The victim was standing in front of the cruiser. The officer testified that she took statements from various witnesses and then spoke with the victim at the scene.

{¶12} Officer Mizer testified that the victim appeared visibly upset and had red marks on her neck. She testified that the victim spoke little English, so she had the victim write her name and address on a piece of paper. The victim wrote her address as 571 Lynnfield Street, Lynn, Massachusetts, 01904. Officer Mizer noticed that that was the same address as the one listed on Gomez' driver's license which she had obtained at the scene. In addition, that was the address utilized by the municipal court when it ordered a temporary protection order for the victim against Gomez. The only other information Officer Mizer was able to obtain from the victim was that she was four months pregnant and that she and Gomez were not married. The officer testified that the victim was not cooperative at the scene, but she suspected that the victim did not answer some questions because she did not understand them.

{¶13} Officer Mizer transferred Gomez to her cruiser and drove him to the police station where she was able to question him. The officer testified that Gomez informed her that he lived at 571 Lynnfield Street, Lynn, Massachusetts. When she asked Gomez how far along his girlfriend was into her pregnancy, Gomez, without correcting the officer's description of the couple's status, told her "four months." She testified that she learned that Gomez and the victim were staying at a Quality Inn near the scene of the incident. Officer Mizer testified that she charged Gomez with felony domestic violence because of eye witness statements regarding the incident, visible injuries on the victim's neck, and the admission by Gomez that the victim was pregnant.

{¶14} Reviewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found the essential elements of the charge of domestic violence were proved beyond a reasonable doubt. See *Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. The State presented evidence that Gomez, knowing that the

victim was pregnant, choked her with enough force to bring her to the ground. The State presented evidence that the victim gave as her own address the same address listed on Gomez' driver's license, indicating that the couple shared a home. There was evidence that the couple was staying together at a hotel in Akron, away from their home state of Massachusetts. Moreover, as Gomez did not challenge Officer Mizer's characterization of the victim as Gomez' girlfriend, the State presented evidence of the couple's affection, society, and friendship. Accordingly, the State presented sufficient evidence of the crime of domestic violence. Gomez' first assignment of error is overruled.

## GOMEZ' ASSIGNMENT OF ERROR II

"THE JURY CREATED A MANIFEST MISCARRIAGE OF JUSTICE AS THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶15} Gomez argues that his conviction for domestic violence is against the manifest weight of the evidence. This Court disagrees.

> "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

> "Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony. Id." *State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, at ¶5.

{¶16} This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶17} Gomez presented the testimony of the victim and he testified in his own defense.

{¶18}  The victim testified that Gomez is a truck driver and she was accompanying him on the road on July 8, 2009, as she had done on one or two prior occasions.  She testified that Gomez paid for their hotel room and dinner that evening.  She testified that she and Gomez began dating in December 2008.  The victim testified that Gomez knew she was pregnant in July 2009, and that he provided support to her during her pregnancy until he was charged with domestic violence and a temporary protection order was issued.  The victim denied that Gomez assaulted her, claiming instead that she pushed him in anger because he would not discuss her desire to move in with him.  She testified that she only stayed at Gomez' home up to three days a week because he was usually on the road with his trucking business.  She testified that, when she stayed at his home, she would cook for him and Gomez would clean.  She admitted that she and Gomez had a sexual relationship.

{¶19}  The victim denied living with Gomez and testified that she only gave his address as her own to police because she was nervous and she had been staying at his house during the two days prior to the incident.  The victim testified that she has not had any contact with Gomez during the pendency of this case but that she would like for the two of them and their baby to be together as a family.

{¶20}  Gomez testified in his own defense.  He admitted that he knew that the victim was pregnant with his child on the night of the incident.  He further testified as follows.  Gomez, the victim, and one of his employees were on a business trip from Massachusetts to Detroit, Chicago, and Canton when the incident occurred.  The victim was with him the whole time.  Gomez got one hotel room for himself and the victim, while his employee got a separate room.  Gomez took the victim to dinner at one restaurant, while the employee went elsewhere to eat.

{¶21} Gomez has lived in a 3-bedroom, single-family house at 571 Lynnfield Street, Lynn, Massachusetts, for five years. He testified that the victim did not live with him, although she stayed with him about one-third of the time. Other times, the victim stayed with her family. Gomez explained: "With the type of work I do, I'm not home all the time. So sometimes I'm off working." Notwithstanding the fact that he was often out on the road, Gomez asserted that "you cannot count someone living with you if it's just two or three days out of the week." Gomez admitted that he and the victim sometimes shared cooking and cleaning duties, that she sometimes accompanied him on business trips on the road, that he got a hotel room for them when they did not sleep in the sleeper compartment of the truck, and that he bought the victim's food. He further admitted that he provided support to the victim until the domestic violence charge was levied against him.

{¶22} Gomez denied assaulting the victim. Instead, he testified that it was the victim who was acting "crazy and stupid" that night.

{¶23} This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness' testimony over the testimony of others. *State v. Crowe*, 9th Dist. No. 04CA0098-M, 2005-Ohio-4082, at ¶22.

{¶24} A review of the record indicates that this is not the exceptional case, where the evidence weighs heavily in favor of Gomez. A thorough review of the record compels this Court to find no indication that the trial court lost its way and committed a manifest miscarriage of justice in convicting Gomez of domestic violence.

{¶25} The weight of the evidence supports the conclusion that Gomez knew the victim was pregnant with his child when he choked her. Eye witness testimony indicated that the couple was yelling and that Gomez cocked his arm back before grabbing the victim's neck and

choking her forcibly to the ground. The weight of the evidence further supports the conclusion that Gomez and the victim cohabited by sharing familial and financial responsibilities and by enjoying consortium. The address the victim gave to the police matched Gomez' address on his driver's license and the address he admitted was his own. There was evidence that the victim stayed at Gomez' home on a regular basis, perhaps even as often as Gomez was in town and not on the road working. Gomez admitted that he provided support for the victim during her pregnancy and that they shared household duties such as cooking and cleaning. The evidence established that the victim would accompany Gomez on some of his out-of-town trucking jobs during which times he would provide her with shelter and food. Both Gomez and the victim admitted that they had a sexual relationship. Accordingly, the weight of the evidence demonstrates that Gomez and the victim shared familial or financial responsibilities through the provision of food, shelter, other financial support, and the sharing of household chores. The weight of the evidence demonstrates that Gomez and the victim shared consortium by means of mutual affection, society, and conjugal relations. As a result, a finding that the victim was cohabiting with Gomez at the time of the incident is not against the manifest weight of the evidence. As Gomez' conviction is not against the manifest weight of the evidence, his second assignment of error is overruled.

### THE STATE'S ASSIGNMENT OF ERROR

"THE COURT ERRED IN NOT IMPOSING A MANDATORY PRISON TERM OF AT LEAST SIX MONTHS"

{¶26} The State argues that the trial court erred by failing to impose a mandatory prison term of at least six months for Gomez' domestic violence conviction. This Court agrees.

{¶27} The State challenges the trial court's application of R.C. 2919.25(D) as it was in effect at the time relevant to this matter. "An appellate court's review of the interpretation and application of a statute is de novo." *Akron v. Frazier* (2001), 142 Ohio App.3d 718, 721.

{¶28} R.C. 2919.25(D)(1) provided that "[w]hoever violates this section is guilty of domestic violence, and the court shall sentence the offender as provided in divisions (D)(2) to (6) of this section." R.C. 2919.25(D)(5) provided, in relevant part, that "if the offender knew that the victim of the violation was pregnant at the time of the violation, a violation of division (A) or (B) of this section is a felony of the fifth degree, and the court shall impose a mandatory prison term on the offender pursuant to division (*A*)(6) of this section[.]" (Emphasis added.) R.C. 2919.25(D)(6) provided: "If division (*A*)(3), (4), or (5) of this section requires the court that sentences an offender for a violation of division (A) or (B) of this section to impose a mandatory prison term on the offender pursuant to this division, the court shall impose the mandatory prison term as follows: (a) If the violation of division (A) or (B) of this section is a felony of the fourth or fifth degree, except as otherwise provided in division (*A*)(6)(b) or (c)[3] of this section, the court shall impose a mandatory prison term on the offender of at least six months." (Emphasis added.)

{¶29} The trial court refused to impose a mandatory prison term on Gomez notwithstanding his fifth degree felony conviction for domestic violence committed at a time in which he knew the victim was pregnant because of what the court found to be a "nonsensical reference *** to division (A)(6) of that statute." Division (D) of the statute addresses sentencing issues. The trial court found division (D) to be "rife with references to nonexistent divisions." It is true that the version of the statute in effect at the relevant time contained references in division

---

[3] These provisions address situations in which the defendant has caused serious physical harm to the pregnant woman's unborn child or caused the termination of the victim's pregnancy and

(D) to nonexistent subsections in division (A). We nevertheless conclude that the trial court erred by failing to impose a mandatory prison term on Gomez.

{¶30} R.C. 2901.04(A) directs that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." This Court has written, however, that "[w]hen it appears beyond a doubt that a statute, when read literally as printed, is impossible of execution, or will defeat the plain object of its enactment, or is senseless, or leads to absurd results or consequences, a court is authorized to regard such defects as the result of error or mistake, and to put such construction upon the statute as will correct the error or mistake by permitting the clear purpose and manifest intention of the Legislature to be carried out." *Wickens v. Dunn* (1942), 71 Ohio App. 177, 181. It has more recently been held that "when the terms of the statute, as written, would never be applicable, and the simple substitution of one character would result in a term that would always be applicable, we must conclude that the statute contains an obviously typographical error, and we may correct the error and give effect to the obvious intent of the statute." *State v. Virasayachack* (2000), 138 Ohio App.3d 570, 574, citing *Brim v. Rice* (1969), 20 Ohio App.2d 293.

{¶31} Applying the above reasoning, this Court recently addressed this exact issue in *State v. Cross*, 9th Dist. No. 25487, 2011-Ohio-3250. The majority wrote: "It is clear that the statute does not contain a section (A)(6), thus, the reference is obviously in error. It was the clear intent of the General Assembly to impose a mandatory prison term if the offender knew that the victim was pregnant. In addition, the plain language of the statute states that it is a felony of the fifth degree. The General Assembly delineated mandatory prison terms in section (D)(6) of the statute." Id. at ¶44. While recognizing that the correction of express statutory

---

require the imposition of a mandatory prison term of twelve months or more. Neither situation is

language is an extraordinary measure which should be undertaken by the courts only where both the error and the correct result are obvious, this Court held that the clear intent of the legislature warranted such measures in the sentencing provisions of R.C. 2919.25(D). Id. at ¶46. That clear intent of the legislature is further evidenced by a subsequent amendment to the statute replacing the prior references to division (A) in R.C. 2919.25(D) with references to division (D), constituting a "simple substitution of one character." See *Virasayachack*, 138 Ohio App.3d at 574. Accordingly, the trial court erred by failing to impose a mandatory prison term on Gomez to effect the clear legislative intent of the statute. The State's sole assignment of error is sustained.

## III.

**{¶32}** Gomez' assignments of error are overruled. The State's assignment of error is sustained. Gomez' conviction for domestic violence is affirmed, but the judgment of sentence is reversed and the cause is remanded for imposition of a sentence consistent with this decision.

Judgment affirmed, in part,
reversed, in part,
and cause remanded.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

applicable to this case.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Carlos Gomez.

 

 

_____
DONNA J. CARR
FOR THE COURT

DICKINSON, J.
CONCURS

BELFANCE, P. J.
CONCURS IN PART, AND DISSENTS IN PART, SAYING:

{¶33} I respectfully dissent form the majority's determination that Mr. Gomez' Crim.R. 29 motion was properly overruled although I agree with the majority's standard in assessing this assignment of error. This Court has not always recognized the distinction between a general challenge to the sufficiency of the evidence on appeal and a challenge to the trial court's denial of a Crim.R. 29 motion. See e.g. *State v. Bezak* (Feb. 18, 1998), 9th Dist. No. 18533, at *1-*2. A general challenge to the sufficiency of the evidence permits this Court to examine all of the evidence produced at trial. See id. However, a review of the denial of a Crim.R. 29 motion should be limited to the evidence presented by the State. In this case, Mr. Gomez made a Crim.R. 29 motion when the State rested, and he renewed his motion at the end of the trial. Thus, I agree that the majority properly limited itself to consideration of the evidence presented in the State's case.

{¶34} Based solely upon the evidence presented in the State's case, I would conclude that the State failed to establish beyond a reasonable doubt that the victim was a family or household member, as the State failed to prove that the victim was cohabiting with Mr. Gomez. See R.C. 2919.25(A),(F).

{¶35} The Supreme Court of Ohio has held that "the offense of domestic violence * * * arises out of the relationship of the parties rather than their exact living circumstances." *State v. Williams* (1997), 79 Ohio St.3d 459, 463-464. The Court went on to state that "the essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium." Id. at 465. "Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations." Id.

{¶36} I agree that the State did meet the minimum threshold necessary to establish the element of consortium. However, I cannot say that it provided evidence that the victim and Mr. Gomez shared familial or financial responsibilities. See id. The State presented evidence that the address on Mr. Gomez' driver's license was the same as the address the victim gave to police and that the two were staying together at the same hotel. There was no evidence that Mr. Gomez was paying for the victim's hotel room or buying her food or other necessities. There was no evidence that established the existence of shared familial responsibilities such as the provision of shelter, food, clothing, or utilities nor whether the parties had shared financial responsibilities or assets. It was also established that the two were not married and that the victim was four months pregnant. There is no evidence from the State's case indicating who the father of the victim's child is. Further, the only evidence presented in the State's case that Mr. Gomez and the victim

were in a relationship was the inference that could be made based upon the fact that Mr. Gomez did not correct the officer when the officer asked how far along his girlfriend, the victim, was into her pregnancy. In *Williams*, the Supreme Court emphasized that the exact living arrangements without more does not establish cohabitation. See id. at 463-464. Contrary to *Williams*, the State attempted to satisfy its burden of demonstrating this aspect of cohabitation with evidence that relied almost solely upon the simple fact that Gomez and the victim shared the same address rather than providing evidence concerning the substance of the relationship. See id.

**{¶37}** Based solely upon the evidence presented in the State's case, I cannot conclude that the State proved that the victim and Mr. Gomez cohabited. To conclude that Mr. Gomez and the victim shared familial or financial responsibilities would require the fact finder to assume facts not in evidence. This is not to say that Mr. Gomez could not have been charged and perhaps convicted of a crime based upon the evidence presented by the State; however, the State proceeded only under the domestic violence statute and not another similar statute, such as R.C. 2903.13(A), prohibiting assault. Accordingly, I dissent from the majority's conclusion that the trial court correctly overruled Mr. Gomez' Crim.R. 29 motion.

**{¶38}** As I would sustain Mr. Gomez' first assignment of error, I would decline to address his remaining assignment of error and the State's assignment of error as they would be rendered moot. See App.R. 12(A)(1)(c).

APPEARANCES:

MARTHA HOM, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.