The STATE of Ohio, Appellee,

v.

BLEVINS, Appellant.

[Cite as *State v. Blevins,* 152 Ohio App.3d 39, 2003-Ohio-1264.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA2002–05–037.

Decided March 17, 2003.

</div>

Donald W. White, Clermont County Prosecuting Attorney, and David H. Hoffmann, Assistant Prosecuting Attorney, for appellee.

McKinney & Namei and Raymond L. Katz, for appellant.

Powell, Judge.

{¶ 1}  Defendant-appellant, Kimberly Renee Blevins, appeals from her conviction and sentence in Clermont County Municipal Court for driving under the influence.  We affirm appellant's conviction.

{¶ 2}  Shortly after 10:00 a.m. on September 3, 2001, appellant was involved in an automobile accident in Clermont County near the Warren County line.  The accident occurred when appellant's car veered left of center and struck another vehicle.

{¶ 3}   Deputy Brian Payne of the Warren County Sheriff's Office was the first law enforcement officer to arrive at the scene.   When he arrived, appellant was still in her vehicle.   Deputy Payne approached appellant's car and began speaking to her.   He noticed that she had glassy eyes, seemed confused, and was repeating herself.   He also noticed that she seemed lethargic and was slurring her speech.   Appellant explained that she had been reaching for her cell phone when the accident occurred.

{¶ 4}   Appellant's husband, Jeffrey Blevins ("Mr. Blevins"), soon arrived at the scene.   Mr. Blevins conversed with appellant at her car while Deputy Payne stood a short distance away.   According to Deputy Payne, Mr. Blevins was periodically glancing at him as if to see whether he was looking.   Mr. Blevins then reached into the car and retrieved a hollow pen tube.   Deputy Payne observed Mr. Blevins's actions and subsequently retrieved the pen tube from Mr. Blevins.   Deputy Payne testified at trial that he observed a white, powdery substance inside the tube.   Deputy Payne then noticed a bulge in Mr. Blevins's pocket.   At Deputy Payne's request, Mr. Blevins gave him the item in his pocket, which was a bottle of OxyContin, prescribed to him.   Deputy Payne detained Mr. Blevins in his cruiser until the arrival of the State Highway Patrol.

{¶ 5}   Trooper Tracy Callahan of the Ohio State Highway Patrol then arrived at the scene to investigate the accident.   He noticed that appellant appeared confused and was slurring her speech.   He also noticed that appellant's eyes were narrow, watery, and glassy, and that she was squinting.   Appellant initially told Trooper Callahan that she had not consumed any medication or narcotics.   However, appellant later told him that, due to a medical condition, she took one Valium at 4:00 a.m. and two of her husband's OxyContin pills at 6:00 p.m. the previous night.

{¶ 6}   Trooper Callahan attempted to administer sobriety tests.   When appellant exited her vehicle, Trooper Callahan noticed that her balance and coordination were "terrible" and that she was very unsteady on her feet.   Trooper Callahan attempted to administer the horizontal gaze nystagmus test.   However, he could not administer the test because appellant could not open her eyes wide enough.   Trooper Callahan next attempted to administer the one-leg-stand test.   Appellant could not complete this test, stating that she had "back problems."   According to Trooper Callahan, appellant "was having trouble standing on two feet, let alone attempting to stand on one."

{¶ 7}   Having determined that appellant was unable to complete the sobriety tests, Trooper Callahan placed appellant under arrest.   He charged her with driving under the influence in violation of R.C. 4511.19(A)(1) and driving left of center in violation of R.C. 4511.25.

{¶ 8}  Following her arrest, appellant was transported to the Batavia post of the Ohio State Highway Patrol.  Trooper Callahan asked appellant to submit a urine sample that could be tested for the presence of narcotics.  Appellant refused to cooperate until she contacted her attorney.  Trooper Callahan subsequently provided appellant with the telephone number of her attorney, but appellant telephoned her husband instead.  Trooper Callahan asked appellant to submit a urine sample several more times.  However, appellant still refused to submit a urine sample and also did not contact her attorney when offered another chance.  Appellant eventually signed a form indicating that she understood the consequences of failing to submit to a chemical test.  She was subsequently released from police custody when her husband arrived.

{¶ 9}  In January 2002, appellant filed a motion to suppress all evidence obtained as a result of her arrest.  She argued that Trooper Callahan did not have probable cause to arrest her.  After a hearing, the trial court denied her motion.

{¶ 10}  In April 2002, a jury trial was held in Clermont County Municipal Court.  Deputy Payne and Trooper Callahan testified for the state, while Mr. Blevins testified for the defense.  The jury found appellant guilty of driving under the influence.  The trial court sentenced appellant to 90 days in the county jail, with 87 days of the sentence being suspended.  The trial court also ordered that appellant's driving privileges be suspended for two years.

{¶ 11}  Appellant now appeals from her conviction and sentence, assigning three errors.

Assignment of Error No. 1

{¶ 12}  "The trial court erred to the prejudice of defendant-appellant in overruling her motion to suppress evidence against her."

{¶ 13}  Despite the above words, appellant does not challenge the trial court's denial of her motion to suppress in this assignment of error.  Instead, appellant challenges the trial court's admission of testimony that she claims was inadmissible under Evid.R. 403(A).  Specifically, appellant challenges the admission of testimony of Deputy Payne and Trooper Callahan regarding the hollow pen tube.  According to appellant, this testimony was "a means of putting before the jury the unsubstantiated and untenable suggestion that [appellant] had been 'snorting OxyContin' prior to her accident."  Appellant contends that the prejudicial effect of this testimony substantially outweighed its probative value.

{¶ 14}  It is well established that the admission and exclusion of evidence rests within the sound discretion of the trial court.  *State v. Robb* (2000), 88 Ohio St.3d 59, 68, 723 N.E.2d 1019.  Absent an abuse of discretion, an appellate court will

not disturb a ruling by a trial court as to the admissibility of evidence. *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 19 OBR 330, 483 N.E.2d 1157.

{¶ 15} Evid.R. 403(A) states as follows: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 16} At trial, both Deputy Payne and Trooper Callahan testified about the hollow pen tube. Deputy Payne testified that Mr. Blevins removed the hollow black plastic tube of a Bic pen from appellant's car. Deputy Payne also testified that he retrieved the pen tube from Mr. Blevins and noticed a white, powdery substance inside the tube. Deputy Payne stated that, based on his training, OxyContin pills are often crushed and snorted through hollow pen tubes. Deputy Payne further testified that, based on his observations of appellant and the evidence at the scene, he believed that appellant was driving under the influence of OxyContin.

{¶ 17} Trooper Callahan testified that when he arrived at the scene, Deputy Payne told him that appellant had been "snorting OxyContin." Appellant's trial counsel successfully objected to this testimony as hearsay. Trooper Callahan then stated that he eventually learned that Deputy Payne had taken a hollow pen tube and a bottle of OxyContin from Mr. Blevins.

{¶ 18} Evid.R. 103(A) states as follows: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context[.]"

{¶ 19} Appellant did not object to Deputy Payne's or Trooper Callahan's testimony regarding the pen tube on the basis that admitting the evidence would violate Evid.R. 403. In fact, appellant did not object to the majority of the testimony regarding the pen tube. Appellant did object when Deputy Payne stated his opinion that he thought appellant had been under the influence of OxyContin. This objection was overruled by the trial court. The basis for this objection is unclear, and it is not apparent from the context of the objection that appellant was objecting under Evid.R. 403.

{¶ 20} With respect to Trooper Callahan's brief testimony regarding the pen tube, the record reveals that appellant successfully objected to Trooper Callahan's testimony that Deputy Payne told him that appellant had been snorting OxyContin. The basis of this objection was the hearsay rule. We find no other objection on the record to Trooper Callahan's testimony regarding the pen tube under Evid.R. 403 or any other rule of evidence.

{¶ 21} Based on our review of the record, appellant did not preserve this Evid.R. 403 issue for review as required under Evid.R. 103(A)(1). Therefore, we review appellant's alleged error under a plain error standard. *State v. Slagle* (1992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916. "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

{¶ 22} We find no plain error in the trial court's allowance of the testimony. The focus of the trial was on whether appellant was driving while under the influence of OxyContin. As the state made clear in its closing argument, alcohol never was an issue in the case. Testimony regarding the pen tube had a high probative value because it tended to suggest appellant's use of OxyContin during the time period leading up to the accident. Appellant claims that she was prejudiced by the testimony because such testimony suggested drug abuse. We find it clear that any prejudicial effect that did exist did not substantially outweigh the probative value of the testimony and that a manifest miscarriage of justice did not occur.

{¶ 23} Appellant places significance on the fact that Trooper Callahan discarded the pen tube following his investigation because he thought it was of little evidentiary value. While Trooper Callahan's decision is surprising, we are of the opinion that testimony regarding the pen tube was still of a high probative value and that any prejudicial effect did not substantially outweigh this probative value.

{¶ 24} Accordingly, we find no plain error in the trial court's allowance of the officers' testimony regarding the pen tube. Appellant's first assignment of error is overruled.

### Assignment of Error No. 2

{¶ 25} "The trial court erred to the prejudice of defendant-appellant in failing to find that she had been prejudiced by the ineffective assistance of counsel."

{¶ 26} In this assignment of error, appellant argues that her trial counsel was ineffective because (1) he did not make a closing argument at the suppression hearing, (2) he declined the trial judge's offer to continue pretrial proceedings and opted to proceed to a jury trial, (3) he failed to move for a mistrial when Deputy Payne testified about the pen tube and its use to snort OxyContin, and (4) he failed to point out an inconsistency between Trooper Callahan's testimony at the suppression hearing and his testimony at trial. Trooper Callahan testified at the suppression hearing that appellant told him she had taken one of her husband's OxyContin pills the night before the accident. At trial, Trooper Callahan testified that appellant told him that she took two of her

husband's OxyContin pills the night before the accident. Under either version, she admits that she took OxyContin.

{¶ 27} To establish a claim of ineffective assistance of counsel, a defendant must show that his counsel's actions were outside the wide range of professionally competent assistance and that he was prejudiced by reason of counsel's actions. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Counsel's performance will not be deemed ineffective unless the defendant shows that "counsel's representation fell below an objective standard of reasonableness," id. at 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, and that there exists a reasonable probability that, were it not for counsel's errors, the result of the proceeding would have been different, id.; *State v. Bradley* (1989), 42 Ohio St.3d 136, 143, 538 N.E.2d 373.

{¶ 28} The defendant bears the burden of demonstrating ineffective assistance of counsel. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 156, 524 N.E.2d 476. In addition, any questions regarding the effectiveness of counsel must be viewed in light of the evidence against the defendant, *Bradley* at 142, 538 N.E.2d 373, with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland* at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 29} After reviewing the entire record, we find that appellant's ineffective-assistance argument does not succeed under the *Strickland* test. Counsel's inaction on each of the four claims is arguably strategic. Regardless, appellant's ineffective-assistance claim as to all four fails on the second prong of the *Strickland* test. Substantial evidence of guilt was presented at trial including appellant's behavior at the accident scene, her failure of the sobriety tests, her admission that she had ingested narcotics, and her refusal to take a chemical test. Given this evidence, there is not a reasonable probability that the result of the trial would have been different.

{¶ 30} Accordingly, appellant's second assignment of error is overruled.

### Assignment of Error No. 3

{¶ 31} "The trial court erred to the prejudice of defendant-appellant in imposing a sentence that, as to Mrs. Blevins' medical needs and circumstances, was cruel and unusual punishment."

{¶ 32} In this assignment of error, appellant concedes that the sentence imposed falls within the terms of the applicable sentencing statute. However, appellant argues that the sentence the trial court imposed constitutes cruel and unusual punishment in violation of the Eighth Amendment due to her medical condition, known as "fibromyalgia." Appellant states that her condition requires "constant and extensive therapeutic devices, specially designed furniture and other amenities which she and her husband have managed to install at their

home." Appellant contends that not having the use of these therapeutic devices during her three-day sentence "could be unbearably painful" and would constitute cruel and unusual punishment.

{¶ 33} As appellant notes, "cases in which cruel and unusual punishment have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person. * * * The penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." *State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 371, 715 N.E.2d 167.

{¶ 34} We find that appellant's cruel-and-unusual-punishment argument is unsupported by the record. Nothing in the record indicates that the Clermont County Jail will be unable to accommodate appellant's special needs during her three-day jail stay. Additionally, nothing in the record supports appellant's claim that the trial court's sentencing order will affect her access to necessary medication for her fibromyalgia condition. We find no evidence in the record indicating that the trial court's sentence "shocks the sense of justice in the community."

{¶ 35} Accordingly, we overrule appellant's third assignment of error.

<div align="right">Judgment affirmed.</div>

WALSH, P.J., and VALEN, J., concur.