[Cite as *State v. Annable*, 194 Ohio App.3d 336, 2011-Ohio-2029.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 94775**

---

## THE STATE OF OHIO,

APPELLEE,

v.

## ANNABLE,

APPELLANT.

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-530634

**BEFORE:**    Jones, J., Blackmon, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:**   April 28, 2011

William D. Mason , Cuyahoga County Prosecuting Attorney,

and James A. Gutierrez, Assistant Prosecuting Attorney, for appellee.

James H. Banks, for appellant.
P.O. Box 40
Dublin, Ohio 43017

LARRY A. JONES, Judge.

{¶ 1} Defendant-appellant, Richard Annable, appeals his convictions. We affirm.

## I. Procedural History and Facts

{¶ 2} In October 2009, Annable was indicted on one count of theft and 30 counts of practicing medicine without a license. The case proceeded to a jury trial. At the conclusion of the state's case, the defense made a Crim.R. 29 motion for acquittal, which was denied. The defense presented evidence, and at the conclusion of its case, renewed its Crim.R. 29 motion; the motion was again denied.

{¶ 3} The jury found Annable guilty of theft and 12 counts of practicing medicine without a license. The trial court sentenced him to four and a half years in prison and ordered him to pay $15,580 in restitution.

{¶ 4} The voluminous testimony[1] in this case revealed the following facts. Annable, a cosmetologist, was the owner of Bella Derm Medi Spa[2] in Westlake, Ohio. The spa's slogan was "the feel of a spa, the care of a physician." One of the services

---

[1]The nearly three-week trial included 37 witnesses for the state and nine witnesses for the defense.

[2]The business was also referred to as Bella Derm Medical Spa.

offered at the spa was mesotherapy. Clients receiving mesotherapy signed a "mesotherapy patient consent form" and a form explaining "mesotherapy post-treatment instructions." The clients also completed and signed a "medical questionnaire" that included a "pre-operative medical history."

{¶ 5} The state's expert witness, Dr. Diane Maiwald, a board-certified dermatologist and founding member of the American Board of Mesotherapy, explained mesotherapy. Dr. Maiwald testified that mesotherapy is used to treat conditions such as arthritis, back pain, fat reduction, and cellulite. She stated that the therapy requires the injection of medication, either with a hypodermic needle or medical roller, under the upper layer of skin. Dr. Maiwald testified that injection, or puncturing of the skin, is necessary so that the required high concentrations of medication can be released into the body.

{¶ 6} Dr. Maiwald further testified that mesotherapy is a medical procedure that requires medical supervision and described various precautions that a doctor performing the procedure should take. For example, she testified that the injected medication needed to be tailored to each person and that the medical rollers should never be reused. Dr. Maiwald also testified that most of her patients undergoing the procedure required prescription medication for pain management. She testified that she had never heard of a cosmetologist performing the procedure.

{¶ 7} The spa became the subject of investigation by law-enforcement officials, the Ohio State Medical Board, and the Ohio State Board of Cosmetology after an employee complained that the therapy "just looked wrong." According to the employee,

Annable would numb the clients' skin with ice packs, and while she (the employee) held the clients' skin "tight," Annable would apply a roller with needles to the area. The employee testified that the clients would usually bleed from the rollers, and that she saw the same roller being used on more than one patient. According to the employee, "these people were in a lot of pain." The employee also testified that in the nearly a year that she worked at the spa, she never saw a doctor on the premises.

{¶ 8} Another employee of the spa, a licensed practical nurse ("LPN"), testified that she began performing the procedure at the spa on her own after Annable "trained" her. The LPN testified that some rollers would be used on more than one client. The LPN also described the numbing with ice packs and testified that some of the clients would bleed. The LPN further testified that she saw only one doctor on the spa premises, but that doctor did not have anything to do with the mesotherapy.

{¶ 9} Several of the spa's mesotherapy clients testified for the state. [3] Collectively, they testified that they believed Annable was a doctor, and based on that belief, they undressed for him for examinations. Annable told the clients that he would inject the area to be treated with amino acids that would "break down the fat." They described the procedure as "painful." Some of the clients testified that they had had special medical conditions to which they alerted Annable and which Annable told them he would manage. The clients stopped the treatments because they were too painful. The

---

[3]The clients who testified were all female.

clients prepaid for the services. Several of the clients requested a refund, but never received one.

{¶ 10} Three doctors testified about their relationship with Annable. First, Dr. Harry Simmons testified that he and Annable had agreed that Dr. Simmons would work as an independent contractor at the spa one or two days a week. Simmons testified that he was to receive training on some of the services the spa offered, and then he would choose which of the services he would perform or oversee. Simmons testified that he observed one or two mesotherapy procedures, but never performed one.

{¶ 11} Dr. Simmons later learned that his name was listed on some of the spa's therapy information sheets as being the doctor who performed procedures, including mesotherapy, that he never performed. After discovering this, Simmons confronted Annable and terminated his relationship with him.

{¶ 12} The second doctor, Dr. Dominick Catalano, operated a medical spa in Streetsboro, Ohio, and he and Annable had discussed the possibility of merging their businesses. During their discussions, Annable told Catalano about mesotherapy; Catalano had never heard of it and had never performed it.

{¶ 13} Catalano and Annable eventually agreed to work together. Catalano testified that under their agreement, only he (Dr. Catalano) would perform medical procedures in either spa, and Annable was to perform cosmetic services relating to hair, nails, and superficial skin resurfacing. Catalano testified that Annable never told him

that he had been performing mesotherapy and that if he had known that, he never would have agreed to work with him.

{¶ 14} Dr. Catalano came to learn that mesotherapy is a "highly specialized form of practice. [It] involves advance knowledge of certain compounds that will be infused into the skin, as well as the potential for side effects and what to do from the side effects from the medications." Dr. Catalano severed his relationship with Annable after he saw him perform mesotherapy.

{¶ 15} The third doctor who testified about his relationship with Annable was Dr. Nicholas Diamantis. Dr. Diamantis testified that he and his partner at the Western Reserve Center for Oral and Facial Cosmetic Surgery, Dr. Matthew Goldschmidt, occasionally worked at Annable's spa as independent contractors.[4] According to Dr. Diamantis, he and Dr. Goldschmidt would provide their own equipment and staff whenever they worked at the spa. Dr. Diamantis testified that Annable displayed his picture and referred to Diamantis as "medical director" on literature advertising the spa without his permission. Dr. Diamantis testified that he never discussed with Annable being the medical director of the spa and, furthermore, never served in that capacity. Drs. Diamantis and Goldschmidt severed their relationship with Annable out of concern that they "may inadvertently violate certain ethical restrictions placed on [them] regarding the unauthorized practice of medicine."

---

[4]Diamantis testified that another partner at his center, Dr. Troy Frazee, never worked at the spa, but Annable advertised that he did.

{¶ 16} Annable testified at trial. He admitted performing mesotherapy. It was Annable's belief that it is proper for a cosmetologist to provide services that claim to have a medical or healing benefit. He admitted that he had never received permission to perform the procedure from the Medical Board or the Cosmetology Board.

{¶ 17} After their investigations, both the Ohio State Medical Board and the Ohio State Cosmetology Board found that Annable was practicing medicine without a license. Annable's cosmetology license was revoked.

{¶ 18} Annable has assigned the following errors for our review:

"I. Defendant-appellant's constitutional and due process rights were violated and he has been subjected to double jeopardy.

"II. The trial court committed reversible error when it denied defendant's motion for judgment of acquittal under Rule 29(A).

"III. The trial court's error in the admission of evidence effectively denied the defendant due process and a fair opportunity to present his defense.

"IV. Defendant's conviction is manifestly against the weight of the evidence and must be overturned.

"V. The trial court erred in convicting and sentencing the defendant."

## II. Law and Analysis

### Double Jeopardy

{¶ 19} For his first assigned error, Annable contends that he was subjected to double jeopardy. We disagree.

{¶ 20} Prior to this case, Annable had twice been under indictment for the crimes charged here: first, in case No. CR-517594, and second, in case No. CR-521710. In the

first case, Annable was indicted by information in February 2009. In the second case, Annable was indicted by a grand jury in March 2009. In November 2009, the court issued judgments in both cases stating, "[O]n recommendation of the prosecutor case is dismissed with prejudice. Defendant re-indicted on new case CR-530634 10/30/2009." The new case, case No. CR-530634, is the appeal now before us.

{¶ 21} In July 2010, upon the state's motion, the court issued judgments in the two prior cases, stating:

> For good cause shown and to correct a clerical error to the case under Case Number[s] CR 517594 [and] CR 521710, be now dismissed without prejudice and the court's entry should now reflect that correction. Case[s] [are] dismissed without prejudice.

{¶ 22} This record evidences that the trial court's original judgments dismissing the two prior cases contained a clerical error, that is, dismissal with prejudice. A new case could not have been filed, as the judgments stated one was, if the dismissals were with prejudice. Moreover, in order to dismiss a case with prejudice, a trial court must find a deprivation of a defendant's constitutional or statutory rights. *State v. Worwell*, Cuyahoga App. No. 86032, 2005-Ohio-6343, ¶ 16. There was no such finding in either of the two prior cases, further evidencing that the original dismissals with prejudice were clerical errors.

{¶ 23} A clerical mistake is a mistake or omission, mechanical in nature and apparent on the record, that does not involve a legal decision or judgment. *State v. Patrick*, Cuyahoga App. No. 89214, 2007-Ohio-6847, ¶ 20. A court may, at any time,

correct clerical mistakes arising from oversight or omission. *State v. Walton*, Cuyahoga App. No. 87347, 2006-Ohio-4771, ¶ 8.

**{¶ 24}** On this record, Annable's double-jeopardy rights were not violated; the prior cases were dismissed without prejudice, and the nunc pro tunc entries stating so were proper.

**{¶ 25}** Within this assignment of error, Annable also takes issue with the fact that he was indicted under R.C. 4731.34 in case Nos. CR-517594 and CR-521710, but the indictment in this case was under R.C. 4731.41. We find no error with these inconsistencies. The crime of practicing medicine without a license is set forth under R.C. 4731.41; R.C. 4731.34 is the definitional section. Apparently realizing that it had previously indicted Annable under the definitional section, rather than the section that makes it a crime to practice medicine without a license, the state corrected itself and properly indicted Annable under R.C. 4731.41 in this case. That occurrence did not create any error.

**{¶ 26}** In light of the above, the first assignment of error is overruled.

### Sufficiency of Evidence

**{¶ 27}** Annable challenges the sufficiency of the evidence in his second assignment of error.

**{¶ 28}** Under Crim.R. 29(A), a court "shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A challenge to the sufficiency of the evidence

supporting a conviction requires a court to determine whether the state has met its burden of production at trial. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 29} Annable contends that the trial court erred by denying his Crim.R. 29 motion for acquittal because the state failed to (1) submit any evidence on the mens rea for practicing medicine without a license, which he contends is recklessness, (2) establish that any "alleged drug" he used was in fact a drug, (3) establish that his acts did not fall under authorized acts permitted by a cosmetologist, and (4) establish theft by deception.

### 1. Culpable Mental State

{¶ 30} Annable raised the issue of the mens rea for practicing medicine without a license in support of his Crim.R. 29 motion and argued that the state failed to present evidence that he acted recklessly.[5] The trial court, however, held that the statute imposes strict liability.

{¶ 31} R.C. 4731.41, governing the crime of practicing medicine or surgery without a certificate, provides:

---

[5] Annable also motioned the court pretrial for dismissal on this ground.

No person shall practice medicine and surgery, or any of its branches, without the appropriate certificate from the state medical board to engage in the practice. No person shall advertise or claim to the public to be a practitioner of medicine and surgery, or any of its branches, without a certificate from the board. No person shall open or conduct an office or other place for such practice without a certificate from the board. No person shall conduct an office in the name of some person who has a certificate to practice medicine and surgery, or any of its branches. No person shall practice medicine and surgery, or any of its branches, after the person's certificate has been revoked, or, if suspended, during the time of such suspension.

{¶ 32} Under R.C. 2901.21(B):

When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.

{¶ 33} The state argues that the "no person shall" language, in the absence of any reference to a required mental state, indicates a legislative intent to impose strict liability. But the Supreme Court of Ohio has held that the usage of the phrase "no person shall" does not by itself evince a plain legislative intent to impose strict liability. *State v. Moody*, 104 Ohio St.3d 244, 2004-Ohio-6395, 819 N.E.2d 268, ¶ 16. Rather than relying on this phrase alone, courts must consider other indicia to determine whether the General Assembly intended to impose strict liability. Id.; see also *State v. Clay*, 120 Ohio St.3d 528, 2008-Ohio-6325, 900 N.E.2d 1000, ¶ 25, quoting *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, ¶ 30; *State v. Bowersmith*, Union App. No. 14-02-02, 2002-Ohio-3386, ¶ 17.

**{¶ 34}** The state urges us to consider the definitional section as evidence that the General Assembly intended R.C. 4731.41 to be a strict-liability offense. We have reviewed R.C. 4731.34 and do not find an indication of the General Assembly's intent to impose strict liability. In fact, that section outlines an exception for practitioners of the Christian Science church. See R.C. 4731.34(B). There are also various other exceptions to the general prohibition against practicing medicine without a license set forth in R.C. 4731.36. For example, R.C. 4731.36(A) provides, "Sections 4731.01 to 4731.47 of the Revised Code shall not prohibit service in case of emergency, domestic administration of family remedies, or provision of assistance to another individual who is self-administering drugs." (See R.C. 4731.36 for various other exceptions.) We recognize that there can be exceptions to a strict-liability offense. But we note the numerous exceptions to practicing medicine without a license in considering the state's contention that "from a public policy and logical perspective the legislature could not impose otherwise [i.e., strict liability]."

**{¶ 35}** In light of the above, we find that R.C. 4731.41 is not a strict-liability statute. Thus, we now consider the implications of the trial court's treating the crime as a strict-liability offense as it relates to the indictment and its instructions to the jury.

**{¶ 36}** Recently, the Ohio Supreme Court, overruling its decision in *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, held that an indictment that charges an offense by tracking the language of the criminal statute is not defective for failure to identify a culpable mental state when the statute itself fails to identify a mental

state. *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, at paragraph one of the syllabus. In light of this ruling, the denial of Annable's Crim.R. 29 motion based on the form of the indictment was proper.

{¶ 37} As it relates to the jury instructions, the trial court, believing that the offense of practicing medicine without a license is a strict liability offense, did not instruct the jury on recklessness.

> As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged, and, where specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element constitutes error.

(Footnote omitted.) *State v. Adams* (1980), 62 Ohio St.2d 151, 153, 404 N.E.2d 144.

{¶ 38} In its instructions to the jury, the court more or less read the charge of practicing medicine without a license as set forth in the statute; it did not give any instruction on strict liability. The defense raised the issue of the mental state as part of its Crim.R. 29 motion; it objected to the jury instructions because of a lack of a unanimity instruction, but not on the ground that the trial court failed to instruct on the mens rea for practicing medicine without a license.

{¶ 39} Crim.R. 30 provides:

> On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.

{¶ 40} Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional

circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.

{¶ 41} There are three conditions that must be met to satisfy the plain-error rule. First, there must be a deviation from a legal rule. Second, the error must be plain, meaning that the error is an obvious defect in the trial proceedings. Third, the error must have affected the defendant's substantial rights. This has been interpreted to mean that the trial court's error must have affected the outcome of the trial. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. The appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17.

{¶ 42} The Ohio Supreme Court has held that the failure to instruct on each element of an offense is not necessarily reversible as plain error. *Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144, at paragraph two of the syllabus. An appellate court must review the instructions as a whole to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions. Id. at paragraph three of the syllabus.

{¶ 43} Under the facts of this case, the error was not so prejudicial that the result of the case would have been different had the error not occurred. We note in particular that although the court incorrectly treated practicing medicine as a strict-liability offense, it did not so instruct the jury. Rather, the court more or less read the statute to the jury. Moreover, there was substantial evidence presented that Annable had acted recklessly. On this record, we find no plain error.

## 2. Proof of use of a Drug

{¶ 44} Annable contends that the state failed to present evidence that the alleged drug he used during mesotherapy was actually a drug. Practicing medicine without a license is not limited to administering drugs, however. "The statute may be violated by the dispensing of a remedy as well as a drug." *State v. Henning* (1948), 83 Ohio App. 445, 450, 78 N.E.2d 588. The state presented sufficient evidence that Annable had dispensed a remedy. The trial court, therefore, properly overruled the Crim.R. 29 motion on this ground.

## 3. Authorized Acts by a Cosmetologist

{¶ 45} Annable contends that the state failed to prove that his acts were not permissible under his cosmetologist license. We disagree. The investigator from the Ohio State Board of Cosmetology testified that cosmetologists are not permitted to puncture the first layer of skin, introduce a foreign substance into the body, or treat medical conditions. There was sufficient testimony that Annable did all these prohibited acts. His Crim.R. 29 motion on this ground was therefore properly denied.

## 4. Theft by Deception

{¶ 46} Annable was charged with theft under R.C. 2913.02(A)(3), which provides, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception[.]"

{¶ 47} Deception means "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by

preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A).

{¶ 48} Six of Annable's clients were listed as the victims of theft. Those victims testified that they prepaid for their services with Annable, but they did not finish their treatment plans. All but one victim requested refunds; none of them were reimbursed.

{¶ 49} The state presented sufficient evidence that Annable used deceptive practices to entice his victims to prepay for the therapy. After taking the victims' money, he did not provide the services as agreed, and Annable did not refund the money. On this record, the trial court properly denied his Crim.R. 29 motion as it related to the theft count.

{¶ 50} In light of the above, the trial court properly denied Annable's Crim.R. 29 motion, and the second assignment of error is overruled.

### Admission of Evidence

#### 1. Expert Testimony

{¶ 51} In his third assignment of error, Annable contends that the trial court improperly limited the testimony of his expert witness, but not the state's, thereby resulting in a "well-known and respected, qualified expert being unable to express an opinion, while a dermatologist who had only the minimal degree was permitted to express an expert opinion on the facts." We disagree.

{¶ 52} The admission of expert testimony is within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion. *State v. Williams* (1996), 74 Ohio St.3d 569, 576, 660 N.E.2d 724. An abuse of discretion requires more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Reiner* (2000), 89 Ohio St.3d 342, 356, 731 N.E.2d 662.

{¶ 53} Evid.R. 702 governs the admissibility of expert testimony and provides:

> A witness may testify as an expert if all of the following apply:
>
> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *.

{¶ 54} After a hearing on the issue of both parties' experts, the trial court ruled that the state's expert, Dr. Maiwald, qualified as an expert in dermatology who performs mesotherapy, but not as an expert in mesotherapy. The court also ruled that the defense's expert, Dr. Ernest Chidio, qualified as an expert in the areas of medicine in which he practiced, but not as an expert in mesotherapy. The court's ruling in regard to Dr. Chidio was based on the fact that he had never even performed a mesotherapy treatment.

## 2. Radio Advertisement

{¶ 55} A tape of a radio advertisement that referred to appellant as "Dr. Annable," which never aired, and was created by Clear Channel, was admitted into evidence over the

defense's objection. The evidence demonstrated that Clear Channel, on its own, created the advertisement with the intent of inducing Annable to purchase air time for it.

{¶ 56} The tape was used by the state in the defense's case, when Annable took the stand, to demonstrate that he was regarded in the community as a doctor. It was proper impeachment evidence. Evid.R. 607 provides that the "credibility of a witness may be attacked by any party." Annable's position at trial was that he had never held himself out to his clients or the public as a doctor. The tape was admitted into evidence to attack Annable's credibility by showing that he was believed to be a doctor. This was proper under Evid.R. 607.

{¶ 57} In light of the above, the third assignment of error is overruled.

## Weight of the Evidence

{¶ 58} Annable contends in his fourth assignment of error that his convictions are against the weight of the evidence. We disagree.

{¶ 59} A challenge to the manifest weight of the evidence attacks the verdict in light of the State's burden of proof beyond a reasonable doubt. *Thompkins,* 78 Ohio St.3d at 386-387, 678 N.E.2d 541. When inquiring into the manifest weight of the evidence, the reviewing court sits as the "thirteenth juror" and makes an independent review of the record. Id. at 387; *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶ 60} The appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of all witnesses, and determines whether in

resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new proceeding ordered. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Where a judgment is supported by competent, credible evidence going to all essential elements to be proven, the judgment will not be reversed as being against the manifest weight of the evidence. *State v. Mattison* (1985), 23 Ohio App.3d 10, 14, 490 N.E.2d 926. Accordingly, reversal on manifest-weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 61} Upon review, we find that the weight of the evidence supports the convictions. The state presented ample evidence that Annable practiced medicine without a license and committed theft by deception. That evidence included his performing a medical procedure, holding himself out, either explicitly or impliedly, as being a doctor, and taking money for the treatments, which were not completed and for which the clients were not refunded.

{¶ 62} On this record, this is not an exceptional case in which the evidence weighs heavily against the conviction. Accordingly, the fourth assignment of error is overruled.

### Conviction and Sentencing

{¶ 63} In his final assignment of error, Annable challenges his conviction based on the lack-of-unanimity instruction. He also challenges his sentence.

**{¶ 64}** In regard to the trial court's denial of Annable's request for an instruction on jury unanimity, the prevailing rule in Ohio is that "a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where the indictment alleges numerous factual bases for criminal liability." (Citations omitted.) *State v. Johnson* (1989), 46 Ohio St.3d 96, 104, 545 N.E.2d 636.

**{¶ 65}** The record reflects that the trial court provided a general unanimity instruction to the jury as follows: "Because this is a criminal case, the law requires that all 12 of you be in agreement before you can consider that you have reached a verdict." We find that the trial court's general unanimity jury instruction was proper in this case.

**{¶ 66}** Moreover, the practicing-medicine-without-a-license counts were not allied offenses, subject to merger at sentencing, as Annable contends. The counts involved separate victims, separate acts, and separate times. No one count was necessary for any other count to be charged. Each count of practicing medicine without a license was a single conceptual grouping.

**{¶ 67}** In *Johnson*, 46 Ohio St.3d 96, 545 N.E.2d 636, the Ohio Supreme Court held that even if a single count of an indictment is capable of being committed by alternative means, it can be construed as a single conceptual grouping. Id. at 104. The Ohio Supreme Court further ruled that despite the existence of alternative means of commission of murder, the count in the indictment was able to be construed as a single conceptual grouping. The crime at issue here, practicing medicine without a license, allows for varying means of committing the single conceptual act.

**{¶ 68}** If a count of an indictment is conceptually single, the court is not required to instruct the jury that it must be unanimous as to the means it was committed. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995. In *Gardner*, the defendant contended that his aggravated-burglary conviction was less than unanimous because it could differ as to the crime to be committed within the dwelling. The Ohio Supreme Court held that although there were alternative means to commit a burglary, the crime of burglary was conceptually single, and the trial court was not required to instruct for factual unanimity. Id. at ¶ 49, 63.

**{¶ 69}** Likewise here, the conceptually single crime of practicing medicine without a license provides several means by which it can be committed. Therefore, a factual-unanimity instruction was not required.

**{¶ 70}** Annable next challenges his sentence and, in particular, that the trial court sentenced him to consecutive terms without making findings. Pursuant to the Ohio Supreme Court's holding in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, the trial court was not required to make any findings on the record in order to support the imposition of the sentence. Post- *Foster*, trial courts have full discretion to impose any sentence within the statutory range and are no longer required to make findings or give their reasons for imposing more than the minimum sentences. Id.

**{¶ 71}** In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the Ohio Supreme Court established a two-step procedure for reviewing felony sentences. *Kalish* held:

In applying *Foster* to the existing statutes, appellate courts must apply a two-step approach. First, [appellate courts] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse of discretion standard.

Id.

{¶ 72} A sentence is not clearly and convincingly contrary to law where the trial court "consider[s] the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, * * * properly applie[s] postrelease control, and * * * sentence[s] * * * within the permissible range." Id. at ¶ 18. In addition, so long as the trial court gives "careful and substantial deliberation to the relevant statutory considerations," the court's sentencing decision is not an abuse of discretion. Id. at ¶ 20.

{¶ 73} Here, the sentences were in the statutory ranges and therefore were not contrary to law. Further, the court considered "all required factors of the law" and found that "prison is consistent with the purpose of R.C. 2929.11." Our review of the record also indicates that the court carefully deliberated upon the relevant statutory considerations and, thus, did not abuse its discretion.

{¶ 74} In light of the above, the fifth assignment of error is overruled.

Judgment affirmed.

BLACKMON, P.J., concurs.

STEWART, J., concurs in part and dissents in part.


**STEWART, J., concurring in part and dissenting in part.**

**{¶ 75}** I concur in the decision to affirm Annable's conviction for practicing medicine without a license. However, I would vacate the theft conviction. The issue of refunds from Annable is a contract matter, not a criminal matter.

**{¶ 76}** In *Orange Village v. Woolfolk* (Oct. 5, 2000), 8th Dist. No. 77451, this court considered an analogous case in which a city brought charges against a private snow-plow operator who took money in advance of the winter season but failed to render those services. The city charged Woolfolk with theft by deception and obtained a conviction, but this court vacated the conviction stating: "Simply put, this is a contract, not a criminal case. The civil law provides adequate remedies for breached contracts * * *." Id. at 4.

**{¶ 77}** It is uncontested that Annable performed procedures on the named theft victims. They thus received in part what they paid for, even if those services were not rendered by a licensed medical doctor. This is not a case where Annable took the money and ran without performing any services whatsoever. The victims may not have received entirely what they bargained for, but any shortcomings in what was agreed to versus what was delivered is purely a matter of contract. I believe, therefore, that the theft count should be vacated.