# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97212

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JEFFREY MCGLOTHAN

DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-546566

**BEFORE:** Kilbane, J., Boyle, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 6, 2012

[Cite as *State v. McGlothan*, 2012-Ohio-4049.]

**ATTORNEY FOR APPELLANT**

Mark DeFranco
Mark A. DeFranco Law Offices
55 Public Square
Suite 1600
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Mollie Ann Murphy
Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Jeffrey McGlothan, appeals from his convictions for attempted felonious assault and domestic violence. For the reasons set forth below, we affirm the conviction for attempted felonious assault, but we reverse the conviction for domestic violence.

{¶2} On February 1, 2011, defendant was indicted for felonious assault, in violation of R.C. 2903.11(A)(1), with a notice of prior conviction and a repeat violent offender specification, and for domestic violence, in violation of R.C. 2919.25(A). Defendant pled not guilty to the charges, and the matter proceeded to a bench trial on June 30, 2011.

{¶3} Cynthia Robinson ("Robinson"), the victim, testified that defendant was her boyfriend, and that they lived together for "about a year" in her apartment in Euclid. Robinson explained that she has a special medical condition that requires her to permanently use a tracheostomy ("trach") tube to help her breathe. The trach tube was surgically placed in her throat 12 years ago and has been there throughout her relationship with McGlothan. Robinson testified that if the trach tube becomes dislodged — something that has only occurred one other time — she must immediately seek hospital care or the opening on her throat could close and she could "die."

{¶4} Robinson testified as to the events of January 20, 2011, that gave rise to the charges. According to Robinson, defendant returned to the apartment in the evening, and she

immediately started questioning him as to his whereabouts earlier in the day, accusing him of going to the west side, which defendant denied. The two started arguing and then the following transpired:

> [Defendant] went into the bedroom and then he came out and he pushed me, pushed me, and he grabbed me like that. Then the trach came out. * * * He pushed me back, and he said, I'm tired of this shit, and took my shirt like this. He grabbed me by my shirt, and that's how the trach came out. Then when the trach came out, he helped me to call the ambulance. I called the ambulance. He was like surprised when it came out.

{¶5} Robinson was then escorted by ambulance to Euclid Hospital.

{¶6} Dr. Peter Raphael, the emergency room physician who attended to Robinson at Euclid Hospital, testified that Robinson was classified as "significant distress, mild to moderate category." He explained that Robinson's blood pressure was significantly elevated and her heart rate was above normal, which could have been "from the trach being replaced or the anxiety from the situation." Dr. Raphael testified that Robinson arrived at the hospital within enough time for him to replace the trach without requiring surgical intervention. Dr. Raphael further indicated that the trach would not "fall out"; it requires someone actually applying force to pull it out.

{¶7} The state then offered Robinson's medical records arising from her emergency room visit to Euclid Hospital. On the physician order sheet, there is a notation of the following: "trach pulled out." On the nursing assessment sheet, under the section titled "Alleged Assault," there is an area to note the patient's "chief complaint." In that section,

the following is noted: "injury to neck. Pt. states her boyfriend purposely pulled her trach out. Euclid PD on scene."

**{¶8}** The trial court ultimately found defendant not guilty of felonious assault, as well as the specifications attached, but guilty of the lesser included offense of attempted felonious assault. The trial court further found defendant guilty of the misdemeanor domestic violence count. Defendant was sentenced to a total of two years in prison and three years of postrelease control.

**{¶9}** Defendant now appeals, assigning five errors for our review.

**{¶10}** Defendant's first assignment of error states:

The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.

**{¶11}** In his first assignment of error, defendant argues that the state failed to present insufficient evidence to support his convictions for attempted felonious assault and domestic violence.

**{¶12}** When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235,

818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

*Attempted Felonious Assault*

{¶13} In order to establish the offense of attempted felonious assault, the state was required to prove that the defendant attempted to cause serious physical harm to the victim. *See* R.C. 2903.11(A)(1) (felonious assault statute) and R.C. 2923.02(A) (attempt statute).

{¶14} Herein, defendant argues that his conviction "is contrary to law because the court found that [he] caused or attempted to cause physical harm" — but not *serious* physical harm as required under the statute. We find this argument to be unpersuasive.

{¶15} In this matter, a majority of this court[1] concludes that the record contains sufficient evidence to support an attempted felonious assault conviction. The state presented evidence that the victim had a trach that she needed to help her breathe. It further established that defendant forcibly pushed the victim onto the couch in the course of an altercation, resulting in the trach being dislodged. The record also revealed that the victim reported at the hospital that someone "purposely pulled" the trach from her neck. And although the victim ultimately received immediate medical care that prevented her from suffering serious physical harm, the testimony at trial revealed that, absent timely medical treatment, the

---

[1] Judge Mary J. Boyle concurs in this portion of the analysis of the assignment of error.

removal of the trach was life-threatening. Construing this evidence in a light most favorable to the state, we find that sufficient evidence exists to find that defendant attempted to cause serious physical harm to the victim.

{¶16} To the extent that defendant argues that his conviction cannot stand because the trial court's finding referenced that he attempted to inflict physical harm only — not serious physical harm, we find this argument misplaced. First, our review of the record reveals that the trial court's statements taken in their entirety evidence that the trial judge omitted a reference to "serious," but indeed found that the state established that defendant attempted to inflict "serious" physical harm. Second, the trial judge's spoken rationale in support of the trial judge's verdict is irrelevant for purposes of our sufficiency review. Accordingly, this portion of the first assignment of error is without merit.

*Domestic Violence*

{¶17} Next, defendant argues that the state presented insufficient evidence to support the domestic violence count under R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Defendant argues that the state failed to present sufficient evidence that he was a family or household member. He contends that the state never established that he had a key to the apartment; Robinson's testimony revealed that she had to "open up the door for him."

{¶18} In order to establish the offense of domestic violence pursuant to R.C. 2919.25(A), the state was required to prove that defendant knowingly caused or attempted to cause physical harm to "a family or household member."

{¶19} "Family or household member" is defined in   R.C. 2919.25(F)(1)(a)(i) as "[a] spouse, a person living as a spouse, or a former spouse of the offender."   Pursuant to R.C. 2919.25(F)(2), the phrase "'[p]erson living as a spouse" is defined as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."

{¶20} As noted in *State v. Williams*, 79 Ohio St.3d 459, 1997-Ohio-79, 683 N.E.2d 1126, at paragraph one of the syllabus, "[t]he offense of domestic violence * * * arises out of the relationship of the parties rather than their exact living circumstances."   In *Williams*, the Ohio Supreme Court determined that the essential elements of "cohabitation" with respect to R.C. 2919.25 are:   "(1) sharing of familial or financial responsibilities and (2) consortium." *Id*. at paragraph two of the syllabus.

{¶21} In discussing these elements, the *Williams* court has provided the following guidance:

> Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets.   Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other,

friendship, and conjugal relations.   These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact.

*Id.* at 465.

{¶22} A majority of this court[2] holds that the testimony at trial failed to demonstrate that Robinson was a family or household member within the meaning of R.C. 2919.25.   As the Ohio Supreme Court recognized in *State v. Carswell,* 114 Ohio St.3d 210, 216, 2007-Ohio-3723, 871 N.E.2d 547, "* * * it is a person's determination to share some measure of life's responsibilities with another that creates cohabitation."   Although Robinson testified that defendant was her boyfriend and he had slept over at her apartment for roughly a year, there was no testimony that the couple shared any living expenses, such as rent and utilities, which would demonstrate shared familial or financial responsibilities.   *Accord State v. Church*, 8th Dist. No. 85582, 2005-Ohio-5198 (holding evidence to be insufficient to show that the victim was family or household member as required for conviction of domestic violence where defendant and victim, boyfriend and girlfriend, did not share any living expenses.)   Accordingly, this portion of the first assignment of error is well-taken.

{¶23} In accordance with the foregoing, a majority of this court has determined that the state presented sufficient evidence to support the conviction for attempted felonious

---

[2]Judge Eileen A. Gallagher concurs in this portion of the analysis of the assignment of error.

assault, and a separate majority of this court has further determined that the state did not present sufficient evidence to support the conviction for domestic violence.

{¶24} Defendant's second assignment of error states:

The trial court erred in admitting inadmissible hearsay found in the medical records that were not shown to be business records and not made to further medical treatment.

{¶25} Defendant argues that the trial court erred in admitting inadmissible hearsay found in the medical records because the hearsay statements were not made to further medical treatment and were not shown to be part of a business record. Defendant, however, never objected to the admission of the medical records. Therefore, as to this issue, he has waived all but plain error on appeal. *See State v. Blevins*, 152 Ohio App.3d 39, 2003-Ohio-1264, 786 N.E.2d 515, ¶ 21 (12th Dist.).

{¶26} We do not find plain error in this case. First, contrary to defendant's assertion, we find that statements regarding Robinson's injury, i.e., that her trach was "purposely pulled out," were relevant for the sake of medical treatment. Second, while the identification of the perpetrator is unnecessary for medical treatment, we find that the failure to redact any reference to "boyfriend" was harmless error in this case. This case was tried to the bench, and therefore, we presume that a trial court considers nothing but relevant and competent evidence in reaching its verdict unless the record indicates otherwise. *Cleveland v. Welms*,

169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125, ¶ 27 (8th Dist.), citing *State v. Fautenberry*, 72 Ohio St.3d 435, 1995-Ohio-209, 650 N.E.2d 878. Further, based on the relevant and competent evidence that was admissible, i.e., Robinson's testimony, the trier of fact reasonably could have concluded that defendant was the perpetrator that "purposely pulled out" the trach tube. Indeed, the record revealed that Robinson called 911 immediately following her altercation with defendant and was taken to the hospital because her trach was dislodged.

{¶27} The second assignment of error is overruled.

{¶28} Defendant's third assignment of error states:

The state of Ohio committed prosecutorial misconduct by making statements to the court about evidence not elicited during trial thereby depriving defendant of a fair trial.

{¶29} In his third assignment of error, defendant argues that he was denied a fair trial because of the prosecutor's misconduct. He contends that the prosecutor repeatedly made improper and prejudicial comments during opening and closing arguments and in response to his Crim.R. 29 motion; specifically, McGlothan argues that the prosecutor mischaracterized the evidence in a manner not supported by the record.

{¶30} The Ohio Supreme Court has held that "[t]he test for prosecutorial misconduct is whether remarks are improper and, if so, whether

they prejudicially affected substantial rights of the accused." *State v. Lott*, 51 Ohio St.3d 160, 165, 55 N.E.2d 293 (1990).

{¶31} The state concedes that the prosecutor did make some imprecise statements but that those statements were harmless. It contends that the prosecutor merely advanced reasonable inferences based on the admissible evidence.

{¶32} Initially, we note that defendant failed to object to any of these statements by the prosecutor. The failure to object to prosecutorial misconduct waives all but plain error. *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 77, 84. The alleged prosecutorial misconduct will constitute plain error only if it is clear that defendant would not have been convicted in the absence of the improper comments.

{¶33} Even if this court were to conclude that the statements were improper, they would not amount to plain error. Again, this was a bench trial, and therefore, it is presumed that the trial court relied on only relevant, material, and competent evidence in arriving at its judgment absent a showing to the contrary. *See State v. Sieng*, 2d Dist No. 2003-CA-35, 2003-Ohio-7246. We find no basis to conclude that the trial court was influenced by these comments and, therefore, we overrule this assignment of error. *State v. Hawthorne*, 7th Dist. No. 04 CO 56, 2005-Ohio-6779, ¶ 42.

{¶34} The third assignment of error is overruled.

{¶35} Defendant's fourth assignment of error states:

Appellant's convictions are against the manifest weight of the evidence.

{¶36} In his fourth assignment of error, McGlothan argues that his convictions are against the manifest weight of the evidence.

{¶37} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as a "thirteenth juror," and, after

> reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, quoting

*State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶38} Where a judgment is supported by competent, credible evidence going to all essential elements to be proven, the judgment will not be reversed as being against the manifest weight of the evidence. *State v. Annable*, 8th Dist. No. 94775, 2011-Ohio-2029, at ¶ 60, citing *State v. Mattison*, 23 Ohio App.3d 10, 14, 490 N.E.2d 926 (8th Dist.1985). Moreover, **reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."** *Martin*. In addition, this court must remain mindful that the weight to be given the evidence and the credibility of the witnesses are matters left primarily to the jury. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶39} Defendant argues that his conviction for attempted felonious assault should not stand because Robinson specifically testified that he did not grab the trach and pull it out. To the extent that the medical records reflect otherwise, defendant argues that "Robinson made a conflicting report to the nurse when she was angry." The trier of fact noted, however, that Robinson had a change of heart at trial. Based on the circumstances, we find that the trial court reasonably found Robinson's earlier statement more credible than her trial testimony.

{¶40} Defendant also maintains that attempt to inflict serious physical harm is against the manifest weight of the evidence. There was competent, credible evidence, however, that the trach became dislodged after defendant forcibly pushed the victim onto the couch, and she reported at the hospital that someone "purposely pulled" the trach from her neck. Absent timely medical treatment, the removal of the trach was life-threatening. We therefore reject this challenge to the manifest weight of the evidence.

{¶41} The fourth assignment of error is overruled.

{¶42} Defendant's fifth assignment of error states:

The trial court erred by sentencing appellant for convictions that are allied offenses of similar import.

{¶43} In his final assignment of error, defendant argues that the trial court erred by sentencing him on both offenses when they are allied offenses of similar import. Specifically, he contends that the domestic violence and attempted felonious assault counts stem from the same conduct, arising out of a single act and single animus. Although the state has conceded that the offenses are allied herein, our reversal of the domestic violence conviction renders this assignment of error moot. App.R. 12(A)(1)(c).

**{¶44}** Judgment affirmed in part, reversed in part, and remanded for resentencing.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., CONCURS IN PART AND DISSENTS IN PART AS TO ASSIGNMENT OF ERROR ONE ON THE ISSUE OF DOMESTIC VIOLENCE (SEE SEPARATE DISSENTING OPINION).

EILEEN A. GALLAGHER, J., CONCURS IN PART AND DISSENTS IN PART AS TO ASSIGNMENT OF ERROR ONE ON THE ISSUE OF ATTEMPTED FELONIOUS ASSAULT.

MARY J. BOYLE, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶45} I respectfully dissent from the majority's resolution of the first assignment of error as it relates to McGlothan's challenge of his conviction for domestic violence on sufficiency grounds. Unlike the majority, I find that the state met its burden and presented sufficient evidence that McGlothan was a "family or household member" to satisfy the elements of R.C. 2919.25(A). As recognized by other districts, the burden of production for establishing cohabitation is not substantial. *State v. Long*, 9th Dist. No. 25249, 2011-Ohio-1050, ¶ 6, citing *Dyke v. Price*, 2d Dist. No. 18060, 2000 Ohio App. LEXIS 4856 at *3 (Oct. 20, 2000). Reviewing courts "should be guided by common sense and ordinary human experience." *State v. Young*, 2d Dist. No. 16985, 1998 Ohio App. LEXIS 5446 at *3 (Nov. 20, 1998).

{¶46} As noted by the majority, the state presented evidence that McGlothan was the victim's boyfriend and that he had lived with the victim in her apartment for approximately a year. Specifically, the victim testified that McGlothan, her boyfriend, had slept over every night. Reviewing this evidence in a light most favorable to the state, I find that any rational trier of fact could have found that the state proved that McGlothan was a "household member" beyond a reasonable doubt. *State v. Gomez*, 9th Dist. Nos. 25496 and 25501,

2011-Ohio-5475 (evidence of an intimate relationship, i.e., boyfriend–girlfriend, coupled with evidence that defendant and victim live together is sufficient to satisfy the "household member" element).

{¶47} Unlike the majority, however, I do not believe that it was necessary for the state to prove that the couple shared any living expenses when it was established that McGlothan lived there. For this same reason, I find the majority's reliance on *State v. Church*, 8th Dist. No. 85582, 2005-Ohio-5198, misplaced. In *Church*, the only evidence connecting the victim with the defendant for purposes of the domestic violence charge was that they were boyfriend and girlfriend; there was no evidence that the defendant lived with the victim at her home. In fact, the defendant was married to another woman. *Id.* at ¶ 36. Under those circumstances, evidence that the defendant helped with the victim's living expenses would be necessary and relevant to support a domestic violence charge. I find this case to be distinguishable.

{¶48} Accordingly, I would overrule the first assignment of error in its entirety.

{¶49} I otherwise concur in all other aspects of the majority's decision.